UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-217-GWU

EARL D. HENSLEY,                                            PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

>Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
>4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  See 20 C.F.R. 404.920(d), 416.920(d).
>
>5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
>6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).
>
>7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-217 Hensley

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-217 Hensley

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Earl D. Hensley, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a depressive disorder and an anxiety disorder. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Hensley retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 18-20). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 42, high school education, and work experience as an electrician could perform any jobs if he had no exertional limitations, but was limited non-exertionally to only simple, repetitive tasks and instructions in non-public work settings. (Tr. 248). The VE responded that there were several medium and heavy level jobs that such a person could perform, and proceeded to give the numbers in

which they existed in the regional and national economies.  (Tr. 248-9).  In the alternative, if the mental limitations were characterized as a "moderate" restriction in the individual's ability to carry out detailed instructions, work in coordination with others without being distracted, interact appropriately with the general public, accept instruction and respond appropriately to criticism from supervisors, get along with coworkers or peers without distraction or exhibiting behavioral extremes, and respond appropriately to changes in the work setting, the VE stated that the same jobs could still be performed.  (Id.).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Hensley alleged disability due to a right foot injury, a right elbow injury, neck pain, and migraine headaches.  (Tr. 94).  At the hearing, he described a severe fracture of his right heel which had occurred in a fall off a ladder in 2002. (Tr. 227).  He was still unable to walk for more than five minutes at a time, and frequently fell down because his right leg would give out.  (Id.).  No medication was effective in helping his pain.  (Tr. 228).  He also complained of lower back problems and a right elbow injury which made it difficult to lift a gallon of milk or even shave himself.  (Tr. 229, 239).  Mr. Hensley also described a lifelong problem with anger control and a more recent problem with depression, for which he was taking

medication prescribed by the local Comprehensive Care Center (CCC). (Tr. 231-2, 242). He felt he was making some progress with treatment. (Tr. 245).

Medical records in the transcript include office notes from Dr. Roland Knight, an orthopedic surgeon, who treated Mr. Hensley beginning in August, 2002 for a fractured right os calcis. (Tr. 163-4). He was put in a cast and ordered not to bear weight for some time, but by October 31, 2002, Dr. Knight noted that Mr. Hensley could perform light work with minimal standing and walking. (Tr. 159). He was allowed to continue on "light work status" with "some climbing" in December, 2002. (Tr. 158). By May, 2003, the plaintiff was said to be working regularly, although he continued to have pain, particularly after standing and walking for long hours. (Tr. 156). On August 7, 2003, one year after the original injury, x-rays showed the fracture to be "solidly healed," and the plaintiff was able to heel and toe walk, albeit with a limp, and it was noted that the range of motion of his ankle and foot was somewhat reduced. (Tr. 154). Dr. Knight concluded that Mr. Hensley had reached maximum healing and assigned a permanent functional impairment of 20 percent to the right foot. (Id.). He did not provide any specific functional limitations.

Dr. Knight also examined the plaintiff for a right elbow injury in June, 2003, but x-rays were negative, and his impression was that the injury was only a muscular strain. (Tr. 155).

Dr. Theodros Mengesha conducted a consultative examination of the plaintiff on July 30, 2005.  Mr. Hensley listed his problems as the right foot injury, which was painful and made it impossible for him to walk long distances, a right elbow injury, which was dated as occurring in January, 2005, and neck pain with associated migraine headaches, although Mr. Hensley stated that migraines had not been diagnosed.  (Tr. 167).  Dr. Mengesha's examination showed a normal gait, a somewhat reduced grip on the right as opposed to the left, and only mild impairment of toe and heel walking. (Tr. 168-9).  There were no neurological abnormalities, and the plaintiff had no difficulty getting on and off the examination table.  (Tr. 169).  Dr. Mengesha concluded that the physical examination was essentially normal, and there was no evidence for any significant physical restrictions.  (Id.).

A state agency physician, Dr. Timothy Gregg, reviewed the evidence as of February 16, 2006 and concluded that the plaintiff had no "severe" physical impairment.  (Tr. 196).

Subsequently, the plaintiff was seen on several occasions by Dr. John Boll. Mr. Hensley made similar complaints about his right foot injury, and also described left knee problems.  (Tr. 211).  Dr. Boll noted that the plaintiff seemed "a little dramatic in his approach to pain," and his physical examination showed only mild chronic changes in the right foot, mild tenderness in the lumbar area, and a normal range of motion of the left knee.  (Id.).  Shortly thereafter, he obtained x-rays of the

lumbosacral spine and right ankle which showed no abnormalities. (Tr. 207-8). Lab testing showed elevated levels of cholesterol and triglycerides, which appeared to be of some concern to the physician (Tr. 200), but he declined to complete a disability evaluation form (Tr. 204). He did refer his patient to an orthopedist, but as the ALJ noted, there is no evidence that the appointment was kept. (Tr. 203).

The ALJ accepted the opinions of Drs. Mengesha and Gregg that the plaintiff would not have any "severe" physical impairment. (Tr. 16). Although one of the reasons given for accepting their opinion was the negative right ankle x-ray, whereas it appears that the plaintiff's actual injury was in the right heel, there is still no evidence of specific permanent functional restrictions related to this problem. Dr. Knight did refer to a 20 percent impairment, but did not translate this into terms that would be useful outside of a Worker's Compensation case. Moreover, both Dr. Mengesha and Dr. Boll found no more than mild abnormalities on later examination. It is also true that the plaintiff returned to work a few months after the heel injury, and continued to work officially until November, 2004, and admitted that he had worked for cash until March, 2005 (Tr. 95) or even February, 2006 (Tr. 226). There were reasonable grounds for the ALJ to use to question the plaintiff's credibility in describing the effects of his heel injury.

Regarding Mr. Hensley's mental complaints, he underwent a consultative examination by Psychologist Judith Broadus in January, 2006. He asserted that he

07-217 Hensley

had been fired from his last job in November, 2004 because he was "fighting after being cursed out." (Tr. 170, 172-3). He described having anger problems for his entire life, and feeling depressed since his work injury, although he was now on a medication which helped him to sleep. (Tr. 170). He saw a psychiatrist and a counselor once a month, and was also taking Zoloft. (Tr. 173). Dr. Broadus noted that he appeared to have a dysthymic mood and was irritable, but his memory was intact, his attention span and concentration were good, and he had a good ability to perform calculations. (Tr. 171). He did not report any symptoms of anxiety, but it appeared that his ability to tolerate stress had decompensated and she also felt that he was reporting some manic behavior. (Tr. 174). Although she stated that his mental examination revealed no deficiencies and he was "within normal limits in all spheres," Dr. Broadus diagnosed a bipolar disorder with a Global Assessment of Functioning (GAF) score of 42. (Id.). A GAF score in this range represents serious impairment. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. In terms of functional restrictions, Dr. Broadus felt that Mr. Hensley would be able to understand, remember, and carry out instructions but he was likely to be less able to sustain attention to perform repetitive tasks and also was unable to relate to others such as supervisors and coworkers in a productive manner. She felt that it was likely that he could not tolerate the stress of a day-to-day work environment. She felt he would be able only to tolerate

working with objects, but could not work with the general public, perform complex functions, or make rapid changes, and would not tolerate being placed in dangerous situations, meeting deadlines or production quotas. (Id.).

A state agency psychologist, Jay Athy, reviewed the evidence on February 9, 2006 and stated that he gave great weight to Dr. Broadus's report, although he emphasized that the plaintiff's mental status was within normal limits. (Tr. 194). He had a history of interpersonal conflict and would therefore do best in a non-public work setting, but retained the mental capacity to perform simple, repetitive tasks in a simple, routine setting. (Id.). Dr. Athy noted a "moderately limited" ability in several areas, as cited in the ALJ's alternative hypothetical question, supra. (Tr. 192-3).

Subsequently, a clinician at CCC submitted a "status report" dated July 10, 2006 in which the plaintiff's diagnoses were given as a depressive disorder and an anxiety disorder. (Tr. 202). His GAF was said to be 55, consistent with "moderate" impairment of functioning per the DSM-IV-TR. The clinician stated that he continued to have mood swings, irritability, and anger problems, but was sleeping better and his crying spells had decreased. (Tr. 202).

The ALJ opined that the opinions of the three psychological sources were "not inconsistent" although he did not accept Dr. Broadus's apparent conclusion that Mr. Hensley would be unable to relate to supervisors and coworkers in a productive

07-217 Hensley

manner or tolerate the stress of a day-to-day work environment. He felt that the evidence established that the plaintiff could function in a non-public work environment. (Tr. 17).

The plaintiff argues on appeal that the ALJ did not provide a sufficient rationale for rejecting the opinion of Dr. Broadus under the standards set out in Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). In this case, the Sixth Circuit held that the Commissioner was required by his regulations at 20 C.F.R. §§ 404.1527 and 416.927 to give good reasons for rejecting a treating source opinion, and that a failure to do so could be grounds for reversal even if the decision was otherwise supported by substantial evidence. As the defendant notes, however, Dr. Broadus was by no stretch of the imagination a treating source, and the Wilson rationale does not apply. Although the reasoning given for the rejection of the Broadus opinion is not as clear as it could be, the ALJ could reasonably have found that her conclusions were inconsistent with a reportedly "normal" mental status examination, and were more extreme than the GAF score of the treating source at CCC would suggest.[1] At the most, therefore, the ALJ's reasoning would represent harmless error.

---

[1] The Sixth Circuit has held in an unpublished case that the opinion of a psychiatrist could be rejected because it was contradicted by other medical evidence, including another physician's GAF score. Gribbins v. Commissioner of Social Security, 37 Fed. Appx. 777 (6th Cir. 2002).

The plaintiff also points to a Psychiatric Review Technique Form (PRTF) completed by Dr. Athy.  The form indicates that the plaintiff had affective and personality disorders (Tr. 177), and, as a part of the "B" criteria, the psychologist noted "moderate" difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace (Tr. 187).  The plaintiff maintains that it was improper to exclude these restrictions from the hypothetical question.  However, Social Security Ruling (SSR) 96-8p provides that the "B" criteria are not intended to be a residual functional capacity assessment; rather, they are used in conjunction with the remainder of the PRTF to determine whether a Listing is met.  SSR 96-8p, p. 4.  The Sixth Circuit has also clearly held that these ratings are not binding on the ALJ, at least when he proceeds to develop a complete and accurate assessment of the claimant's mental impairment.  Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001).  In the present case, the ALJ's alternative hypothetical question listed every specific impairment found by Dr. Athy as a part of his detailed mental residual functional capacity assessment, and, as noted above, these factors are supported by substantial evidence.

Finally, additional evidence was submitted to the Appeals Council, in the form of a report from the plaintiff's treating psychiatrist, but no reason was given for failing to submit it earlier, and the plaintiff has not requested a remand under Sentence Six of 42 U.S.C. § 405(g).  Accordingly, it does not provide a basis for

07-217  Hensley

remand.  Cline v. Commissioner of Social Security, 96 F.3d 146, 148-9 (6th Cir. 1996).

The decision will be affirmed.

This the 9th day of April, 2008.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**